UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Judge |
| CHUKWUDI NWAWKA, M.D., SILVER | ) | |
| CROSS HOSPITAL AND MEDICAL | ) | Formerly Case No. 2018 L 3793 |
| CENTERS, MANAMAR SINGH, M.D., and | ) | Circuit Court of Cook County, Illinois |
| HOSPITALIST CONSULTANTS GROUP, | ) | |
| SC, | ) | |
| Defendants. | ) | |

**NOTICE OF REMOVAL OF A CIVIL ACTION AND**
**SUBSTITUTION OF THE UNITED STATES AS DEFENDANT**

To:   Dorothy Brown                                    Randall F. Peters
      Clerk of the Circuit Court                       177 N. State Street, 3rd Floor
      Richard J. Daley Center, Room 1001               Chicago, Illinois 60601
      50 West Washington Street
      Chicago, Illinois 60602

      Lowis & Gellen                                   Swanson Martin & Bell LLP
      175 W. Jackson, Suite 950                        330 N. Wabash Street
      Chicago, Illinois 60604                          Chicago, Illinois 60611

      The United States, by its attorney, John R. Lausch, Jr., United States Attorney for the

Northern District of Illinois, submits this notice of removal of the above-captioned civil action

from the Circuit Court of Cook County, Illinois, to the United States District Court, Northern

District of Illinois, pursuant to 42 U.S.C. § 233, and in support thereof states the following:

      1.      On April 13, 2018, plaintiff Rhonda White commenced the above civil action

against Chukwudi Nwawka, M.D., and others, alleging medical malpractice.  A copy of the state

court complaint is attached as Exhibit A.  For purposes of this lawsuit, Aunt Martha's Youth

Service Center, Inc., is a private entity that receives grant money from the Public Health Service

pursuant to 42 U.S.C. § 233.  Exhibit B.  In addition, Chukwudi Nwawka, M.D., was acting within

the scope of his employment at the Center with respect to the incidents referred to in the complaint. *Id.*

2.     This notice of removal is filed in accordance with 42 U.S.C. § 233 upon certification by the designee of the Attorney General of the United States that defendant Access Community Health Network was a private entity receiving grant money from the Public Health Service and that defendant Chukwudi Nwawka, M.D., was acting within the scope of his employment at the Access Community Health Network with respect to the incidents referred to in the complaint.  Exhibit B.

3.     This notice of removal may be filed without bond at any time before trial.  42 U.S.C. § 233(c).  Trial has not yet been had in this action.

4.     Pursuant to the certification by the Attorney General's designee and the filing of this notice of removal, under 28 U.S.C. § 233(c), this civil action is deemed an action against the United States, and the United States is substituted as the sole federal party defendant in place of defendant Chukwudi Nwawka, M.D.

WHEREFORE, this action now pending in the Circuit Court of Cook County, Illinois, is properly removed to this court pursuant to 42 U.S.C. § 233, and the United States is substituted as the defendant in lieu of Chukwudi Nwawka, M.D.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Gina Brock
    GINA BROCK
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-7919
    gina.brock@usdoj.gov

# Exhibit A

*J cares*
*6-2 215*
*7-5-18*

| | |
|---|---|
| 2220 · Not Served | 2221 · Not Served |
| 2320 · Served By Mail | 2321 · Served by Mail |
| 2420 · Served by Publication | 2421 · Served by Publication |
| SUMMONS | ALIAS – SUMMONS |

## IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT, LAW DIVISION

Rhonda White,

Plaintiff,

v.

Chukwudi Nwawka, M.D.
Silver Cross Hospital and Medical Centers
Manamar Singh, M.D.
Hospitalist Consultants Group, SC

No. 18 L 3793
Please Serve:
Chukwudi Nwawka MD
233 W. Joe Orr Rd
Chicago Heights, Il 60411

Defendants.
SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file appearance, in the office of the Clerk of this Court (located in the Richard J. Daley Center, Chicago, Illinois 60602) within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

There will be a fee of $203.00 to file your Appearance, or you may present an Application to Sue or Defend as a Poor Person (form #CCG-19). If approved by the Presiding Judge, the fee will be waived.

WITNESS DOROTHY BROWN , 20____
CLERK OF CIRCUIT COURT

JUN 1 4 2018

Name      *Randall F. Peters Assoc*
Attorney for   *Plaintiff*
Address   *177 N STATE*
City     *Chicago*
Telephone  *312 318 1245*
Atty. No.   *11412*

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, LAW DIVISION**

Rhonda White,

                                              Plaintiff,

v.                                                          No.

Chukwudi Nwawka, M.D.
Silver Cross Hospital and Medical Centers
Manamar Singh, M.D.
Hospitalist Consultants Group, SC

                                              Defendants.

## COUNT I
### Chukwudi Nwawka, MD

NOW COMES, Plaintiff, Rhonda White, by and through her attorneys Curcio Law Offices and Randall F. Peters & Associates, and states as follows:

1.      That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Chukwudi Nwawka, M.D., was a duly licensed physician, practicing medicine in the specialty of Obstetrics and Gynecology in the State of Illinois, including the County of Cook.

2.      That on April 14, 2016, and at all times relevant and subsequent thereto, Plaintiff, Rhonda White, was a patient under the care and treatment of Defendant, Chukwudi Nwawka, M.D., at Silver Cross Hospital and Medical Centers, Will County, Illinois, for a total abdominal hysterectomy-bilateral salpingo oophorectomy procedure and post operative care related thereto, and developed a left ureteral vaginal fistula, post hysterectomy, requiring a subsequent urinary genital tract fistula repair.

3.      That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Chukwudi Nwawka, M.D., owed the Plaintiff, Rhonda White, a duty of care to exercise reasonable and appropriate medical care and treatment as would be exercised in similar localities under similar circumstances.

4.      That notwithstanding the duty aforesaid, Defendant, Chukwudi Nwawka, M.D., was careless and negligent in one or more of the following respects:

a.      Failed to obtain timely urological consultation;
b.      Failed to timely diagnose a distal ureteral injury of Rhonda White; and
c.      Failed to adequately evaluate Rhonda White's signs and symptoms of a distal ureteral injury and the need for timely urological assessment and surgical treatment.

5.      That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions by Defendant, Chukwudi Nwawka, M.D., Plaintiff, Rhonda White sustained physical injury, past and future pain and suffering, and lost enjoyment of life. She has become liable for large sums of money to pay medical and hospital expenses in an endeavor to be cured of her injuries (past and future), and will be deprived from attending to the ordinary affairs of life, due to her residual damage from a spastic bladder resulting in urinary frequency and incontinence, and chronic left flank pain, all to her damage.

1

**WHEREFORE**, Plaintiff demands judgment against Defendant, Chukwudi Nwawka, M.D.,for a sum of money in excess of the jurisdictional limit to file this action in the law division of the Circuit Court of Cook County, State of Illinois, together with the costs of this action.

**COUNT II**
Chukwudi Nwawka, M.D.
Silver Cross Hospital and Medical Centers

Plaintiff states:

1.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Chukwudi Nwawka, M.D., was a physician and surgeon, licensed to practice medicine in the State of Illinois, and was engaged in the practice of medicine in the State of Illinois, and held himself out to the public, and to the Plaintiff, Rhonda White, as being fully qualified and trained in the practice of medicine as a physician and surgeon, practicing obstetrics and gynecology in the State of Illinois, including the County of Cook.

2.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Silver Cross Hospital and Medical Centers, was an Illinois corporation, duly organized and existing in the State of Illinois, providing medical and surgical care and treatment to patients with various medical ailments in the County of Will, State of Illinois.

3.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Chukwudi Nwawka, M.D., was a duly authorized agent and employee of Defendant, Silver Cross Hospital and Medical Centers, and was acting within the scope of his employment, being held out to the public and relied upon by the Plaintiff, Rhonda White, as a licensed physician and surgeon, specializing in the field of obstetrics and gynecology as an apparent agent and employee of Silver Cross Hospital and Medical Centers.

4.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Chukwudi Nwawka, M.D., individually, and as an agent and employee of Defendant, Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, rendered medical care to the Plaintiff, Rhonda White, performing total abdominal hysterectomy-bilateral salpingo oophorectomy, and the post operative care related thereto, wherefrom a left ureteral vaginal fistula developed, post operatively, requiring a subsequent genital tract fistula repair.

5.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Chukwudi Nwawka, M.D., individually, and as an agent and employee of Defendant, Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, owed the Plaintiff, Rhonda White, a duty to use that degree of skill in medical care and treatment as would be exercised in similar localities under similar circumstances.

6.     That notwithstanding this duty, Defendant, Chukwudi Nwawka, M.D., individually, and as an agent and employee of Defendant Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, acted or failed to act in one or more of the following ways amounting to that form of negligence known as medical malpractice:

a.     Failed to obtain timely urological consultation;
b.     Failed to timely diagnose a distal ureteral injury of Rhonda White; and
c.     Failed to adequately evaluate Rhonda White's signs and symptoms of a distal ureteral injury and the need for timely urological assessment and surgical treatment.

7.     That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions by Defendant, Chukwudi Nwawka, M.D., individually, and as an agent and employee of Defendant Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, Plaintiff, Rhonda White sustained physical injury, past and future pain and suffering, and lost enjoyment of life. She has become liable for large sums of money to pay medical and hospital expenses in an endeavor to be cured of her injuries (past and future), and will be deprived from attending to the ordinary affairs of life due to her residual disability from a spastic bladder resulting in a urinary frequency and incontinence, and chronic left flank pain, all to her damage.

WHEREFORE, Plaintiff demands judgment against Defendant, Chukwudi Nwawka, M.D., individually, and as an agent and employee of Defendant Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, for a sum of money in excess of the jurisdictional limit to file this action in the law division of the Circuit Court of Cook County, State of Illinois, together with the costs of this action.

## COUNT III
### Manamar Singh, M.D.

Plaintiff states:

1.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Manamar Singh, M.D., was a duly licensed physician, practicing medicine in the specialty of internal medicine as a hospitalist in the State of Illinois, including the County of Cook.

2.     That on April 14, 2016, and at all times relevant and subsequent thereto, Plaintiff, Rhonda White, was a post operative hysterectomy patient at Silver Cross Hospital and Medical Centers, Will County, Illinois, under the care and treatment of Defendant, Manamar Singh, M.D., hospitalist, and developed elevated creatinine, and manifested abnormal CT findings of her abdomen and pelvis, known to Defendant, Manamar Singh, M.D., while managing the Plaintiff, Rhonda White, post operatively.

3.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Manamar Singh, M.D., owed the Plaintiff, Rhonda White, a duty of care to exercise reasonable and appropriate medical care and treatment as would be exercised in similar localities under similar circumstances.

4.     That notwithstanding the duty aforesaid, Defendant, Manamar Singh, M.D., was careless and negligent in one or more of the following respects:

a.     Carelessly and negligently failed to adequately assess Plaintiff's Rhonda White's elevated creatinine and provide a differential diagnosis to include renal system injury;

b.     Carelessly and negligently failed to communicate to Rhonda White's attending physician her need for either urology or nephrology consultation to assess, evaluate, and rule out renal system trauma of plaintiff Rhonda White's renal system;

c.     Carelessly and negligently ordered an untimely discharge of Plaintiff Rhonda White from the hospital with abnormal lab values that had not returned to normal baseline; and

d.     Carelessly and negligently failed to continue evaluation of plaintiff Rhonda White's abnormal lab values to rule out injury to her renal system before discharge

5.     That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions by Defendant, Manamar Singh, M.D., Plaintiff, Rhonda White sustained physical injury, past and future pain and suffering, and lost enjoyment of life. She has become liable

for large sums of money to pay medical and hospital expenses in an endeavor to be cured of her injuries (past and future), and will be deprived from attending to the ordinary affairs of life, due to her residual disability from a spastic bladder, resulting in urinary frequency and incontinence, and chronic left flank pain, all to her damage.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Manamar Singh, M.D., for a sum of money in excess of the jurisdictional limit to file this action in the law division of the Circuit Court of Cook County, State of Illinois, together with the costs of this action.

## COUNT IV
### Manamar Singh, M.D.
### Hospitalist Consultants Group, SC

Plaintiff states:

1.    That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Manamar Singh, M.D., was a physician and surgeon, licensed to practice medicine in the State of Illinois, and was engaged in the practice of medicine in the State of Illinois, and held himself out to the public, and to the Plaintiff, Rhonda White, as being fully qualified and trained in the practice of medicine as a physician and surgeon, practicing internal medicine as a hospitalist, in the State of Illinois, including the  County of Cook.

2.    That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Hospitalist Consultants Group, S.C., was an Illinois corporation, duly organized and existing in the State of Illinois, providing medical and hospitalist care and treatment to hospital inpatients with various medical ailments, throughout the State of Illinois, including the County of Cook.

3.    That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant,  Manamar Singh, M.D., was a duly authorized agent and employee of Defendant, Hospitalist Consultants Group, S.C., and was acting within the scope of his employment, being held out to the public and relied upon by the Plaintiff, Rhonda White, as a licensed physician and surgeon, specializing in the field of internal medicine as a hospitalist and agent and employee of Hospitalist Consultants Group, S.C.

4.    That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Manamar Singh, M.D., individually, and as an agent and employee of Defendant, Hospitalist Consultants Group, S.C.,  and Hospitalist Consultants Group, S.C., and each of them, rendered medical care to the Plaintiff, Rhonda White, post operatively as a hospitalist, having undergone a total abdominal hysterectomy-bilateral salpingo oophorectomy, wherefrom a left ureteral vaginal fistula developed, requiring a subsequent genital tract fistula repair.

5.    That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Manamar Singh, M.D., individually, and as an agent and employee of Defendant, Hospitalist Consultants Group, S.C.,  and Hospitalist Consultants Group, S.C., and each of them, owed the Plaintiff, Rhonda White, a duty to use that degree of skill in medical care and treatment as would be exercised in similar localities under similar circumstances.

6.    That notwithstanding this duty, Defendant, Manamar Singh, M.D., individually, and as an agent and employee of Defendant, Hospitalist Consultants Group, S.C.,  and Hospitalist Consultants Group, S.C., and each of them, acted or failed to act in one or more of the following ways amounting to that form of negligence known as medical malpractice:

4

a. Carelessly and negligently failed to adequately assess Plaintiff's Rhonda White's elevated creatinine and provide a differential diagnosis to include renal system injury;

b. Carelessly and negligently failed to communicate to Rhonda White's attending physician her need for either urology or nephrology consultation to assess, evaluate, and rule out renal system trauma of plaintiff Rhonda White's renal system;

c. Carelessly and negligently ordered an untimely discharge of Plaintiff Rhonda White from the hospital with abnormal lab values that had not returned to normal baseline; and

d. Carelessly and negligently failed to continue evaluation of plaintiff Rhonda White's abnormal lab values to rule out injury to her renal system before discharge

7. That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions by Defendant, Manamar Singh, M.D., individually, and as an agent and employee of Defendant, Hospitalist Consultants Group, S.C., and Hospitalist Consultants Group, S.C., and each of them, Plaintiff, Rhonda White sustained physical injury, past and future pain and suffering, and lost enjoyment of life. She has become liable for large sums of money to pay medical and hospital expenses in an endeavor to be cured of her injuries (past and future), and will be deprived from attending to the ordinary affairs of life due to her residual disability from a spastic bladder resulting in a urinary frequency and incontinence, and chronic left flank pain, all to her damage.

WHEREFORE, Plaintiff demands judgment against Defendant, Manamar Singh, M.D., individually, and as an agent and employee of Defendant, Hospitalist Consultants Group, S.C., and Hospitalist Consultants Group, S.C., and each of them, for a sum of money in excess of the jurisdictional limit to file this action in the law division of the Circuit Court of Cook County, State of Illinois, together with the costs of this action.

## COUNT V
### Manamar Singh, M.D.
### Silver Cross Hospital and Medical Centers

Plaintiff states:

1. That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Manamar Singh, M.D., was a physician and surgeon, licensed to practice medicine in the State of Illinois, and was engaged in the practice of medicine in the State of Illinois, and held himself out to the public, and to the Plaintiff, Rhonda White, as being fully qualified and trained in the practice of medicine as a physician and surgeon, practicing internal medicine as a hospitalist, at Silver Cross Hospital and Medical Centers in Will County, State of Illinois.

2. That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Silver Cross Hospital and Medical Centers, was an Illinois corporation, duly organized and existing in the State of Illinois, providing medical and hospitalist care and treatment to hospital inpatients with various medical ailments at its health care facilities in the County of Will, State of Illinois.

3. That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Silver Cross Hospital and Medical Centers, was a duly authorized agent and employee of Defendant, Hospitalist Consultants Group, S.C., and was acting within the scope of his employment, being held out to the public and relied upon by the Plaintiff, Rhonda White, as a licensed physician and surgeon, specializing in the field of internal medicine as a hospitalist, and actual and/or apparent agent and employee of Defendant, Silver Cross Hospital and Medical Centers.

5

4.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Manamar Singh, M.D., individually, and as an actual and/or apparent agent and employee of Defendant, Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, rendered medical care to the Plaintiff, Rhonda White, post operatively as a hospitalist, having undergone a total abdominal hysterectomy-bilateral salpingo oophorectomy, wherefrom a left ureteral vaginal fistula developed, and required a subsequent genital tract fistula repair.

5.     That on April 14, 2016, and at all times relevant and subsequent thereto, Defendant, Manamar Singh, M.D., individually, and as an actual and/or apparent agent and employee of Defendant, Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, owed the Plaintiff, Rhonda White, a duty to use that degree of skill in medical care and treatment as would be exercised in similar localities under similar circumstances.

6.     That notwithstanding this duty, Defendant, Manamar Singh, M.D., individually, and as actual and/or apparent agent and employee of Defendant, Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, acted or failed to act in one or more of the following ways amounting to that form of negligence known as medical malpractice:

a.     Carelessly and negligently failed to adequately assess Plaintiff's Rhonda White's elevated creatinine and provide a differential diagnosis to include renal system injury;

b.     Carelessly and negligently failed to communicate to Rhonda White's attending physician her need for either urology or nephrology consultation to assess, evaluate, and rule out renal system trauma of plaintiff Rhonda White's renal system;

c.     Carelessly and negligently ordered an untimely discharge of Plaintiff Rhonda White from the hospital with abnormal lab values that had not returned to normal baseline; and

d.     Carelessly and negligently failed to continue evaluation of plaintiff Rhonda White's abnormal lab values to rule out injury to her renal system before discharge

7.     That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions by Defendant, Manamar Singh, M.D., individually, and as an actually and/or apparent agent and employee of Defendant, Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, Plaintiff, Rhonda White sustained physical injury, past and future pain and suffering, and lost enjoyment of life. She has become liable for large sums of money to pay medical and hospital expenses in an endeavor to be cured of her injuries (past and future), and will be deprived from attending to the ordinary affairs of life due to her residual disability from a spastic bladder resulting in a urinary frequency and incontinence, and chronic left flank pain, all to her damage.

     **WHEREFORE**, Plaintiff demands judgment against Defendant, Manamar Singh, M.D., individually, and as actual and/or apparent agent and employee of Defendant, Silver Cross Hospital and Medical Centers, and Silver Cross Hospital and Medical Centers, and each of them, for a sum of money in excess of the jurisdictional limit to file this action in the law division of the Circuit Court of Cook County, State of Illinois, together with the costs of this action.

### COUNT VI

Silver Cross Hospital and Medical Centers

1.     That on April 14, 2016, and at all times relevant thereto, Defendant, Silver Cross Hospital and Medical Centers, was an Illinois corporation, duly organized and existing in the State of Illinois, providing medical and surgical care and treatment to patients with various medical ailments in the County of Will, State of Illinois.

2.     That on April 14, 2016, and at all times relevant, Defendant, Silver Cross Hospital Medical Centers, provided a surgical assistant at the request of Defendant, Chukwudi Nwawka, M.D., for an April 14, 2016, surgery of Plaintiff, Rhonda White, a patient with known peritoneal adhesions that would require an additional lysis of adhesions on the day of surgery at Silver Cross Hospital and Medical Centers.

3.     That on April 14, 2016, and at all times relevant thereto, Plaintiff, Rhonda White was admitted to Silver Cross Hospital and Medical Centers for her scheduled surgery, and was provided a surgical team by the Defendant, Silver Cross Hospital and Medical Centers that included a nurse to serve as the surgical assistant.

4.     That at all times relevant hereto, Defendant, Silver Cross Hospital Medical Centers, owed the Plaintiff, Rhonda White, a duty to use that degree of care and treatment in providing a surgical assistant as a part of the surgical team for her operation to ensure safe patient care and facilitate an optimal outcome.

5.     That notwithstanding this duty, Defendant, Silver Cross Hospital Medical Centers, acted or failed to act in one or more of the following ways amounting to that form of negligence known as medical malpractice:

a.     Carelessly and negligently provided a surgical assistant for Plaintiff Rhonda White's schedule major abdominal surgery;

b.     Failed to provide another physician as first assistant for Plaintiff Rhonda White's major abdominal surgery;

c.     Carelessly and negligently provided a surgical assistant who lacked appropriate training and experience to assist in Plaintiff Rhonda White's major abdominal surgery; and

d.     Failed to provide an adequate surgical assistant in providing a nurse for major abdominal surgery to be performed on Plaintiff Rhonda White

6.     That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions by Defendant, Silver Cross Hospital and Medical Centers, Plaintiff, Rhonda White sustained physical injury, past and future pain and suffering, and lost enjoyment of life. She has become liable for large sums of money to pay medical and hospital expenses in an endeavor to be cured of her injuries (past and future), and will be deprived from attending to the ordinary affairs of life due to her residual disability from a spastic bladder resulting in a urinary frequency and incontinence, and chronic left flank pain, all to her damage.

     WHEREFORE, Plaintiff demands judgment against Defendant, Silver Cross Hospital and Medical Centers, for a sum of money in excess of the jurisdictional limit to file this action in the law division of the Circuit Court of Cook County, State of Illinois, together with the costs of this action.

Randall F. Peters

Randall F. Peters & Associates
177 N. State Street
3rd Floor
Chicago, Il 60601
Attorney No. 11942

7

### AFFIDAVIT OF ATTORNEY

RANDALL F. PETERS, the attorney for the plaintiff, having been first duly sworn, on oath deposes and states:

1. That the affiant has consulted and reviewed the facts of this case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

2. That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action.

3. That the affiant has concluded on basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for the filing of this action.

4. That the profession of the reviewing health professional is a physician licensed to practice medicine in all of its branches.

_____
RANDALL F. PETERS

SUBSCRIBED and SWORN to
before me this _____13_ day
of _____April_, 2018

_____
Notary Public

OFFICIAL SEAL
PHOEBE J JIMENEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/12/18

## REPORT OF REVIEWING HEALTH PROFESSIONAL

1.     I am a physician and surgeon, licensed to practice medicine in all of its branches.

2.     I am knowledgeable in the issues of medical care related to ureteral/vaginal tract injury, in the relevant issues involved in this particular action.

3.     I practice medicine and have practiced medicine within the last 6 years in areas of health care at issue in this particular action.

4.     I am an expert in areas of healthcare and medicine related to the care governing the subject of this case. I am qualified by my education, experience, and training as it relates to the subject of this case.

5.     I have reviewed the medical records of Rhonda White from Silver Cross Hospital, Palos Community Hospital, Presence St. Joseph Medical Center, Aunt Martha's Health Center, CT imaging of the abdomen and pelvis, and Associated Urological Specialists, LLC. I have determined after a review of those medical records and other relevant material involved in this particular case, that there is a reasonable and meritorious cause for the filing of this action.

6.     I am familiar with ureteral /vaginal injury, fistula formation post hysterectomy, and the treatment of same, in accordance with the standard of care.

7.     It is my opinion, based on a reasonable degree of medical certainty, after review and examination of the material aforestated, that there exists a meritorious and reasonable cause for filing a lawsuit against Chukwudi Nwawka, MD for the following reasons:

On April 14, 2016, Ms. Rhonda White was admitted to Silver Cross Hospital for a total hysterectomy and bilateral salpingo oophorectomy. Surgery was performed by Dr. Chukwudi Nwawka and assisted by Silver Cross nurse, Ms. Natalie Stranger. During the procedure, peritoneal adhesions were lysed and Dr. Nwawka encountered multiple large uterine fibroids. Postoperatively, Ms. White was followed by Silver Cross hospitalist, Dr. Manamar Singh. Ms. White experienced low urine output, abdominal pain, and acute renal insufficiency, demonstrating an elevated creatinine value of 1.47 mg/dl. A CT of the abdomen and pelvis without contrast was ordered for complaints of upper quadrant pain on April 15. Free intraperitoneal gas was noted along with trace fluid in the pericolic gutters, moderate slightly hyperdense fluid in the cul-de-sac region and fluid around the urinary bladder. Also, a prominent left ureter was noted. Follow up CT was advised with PO and IV contrast. Ms. White was discharged home on April 16, 2016 without urological consultation.

Abdominal pain complaints persisted, and on April 17, 2016, Ms. White presented to the Silver Cross Hospital emergency department. She was readmitted for observation and assessment. Another CT of her abdomen with contrast was ordered by the emergency room physician, Dr. Daniel Checco. Findings reported an "interval development of loculated rim-enhancing fluid collection in the mid line pelvis, most likely an abscess collection or loculated post-surgical fluid collection such as seroma". The study also revealed a "slight interval worsening of thickening trace fluid in the pericolic gutters, which could be post inflammatory". The presence of a mild proximal left hydroureter was

also noted. Laboratory studies were obtained, demonstrating a persistently elevated serum creatinine of 1.35 mg/dl and a urine specific gravity of 1.042. On April 18th, Ms. White was discharged with instructions to follow up with Dr. Nwawka within two to four weeks, and to take Norco at home. Her discharge diagnosis was "abdominal pain".

A follow up visit occurred with Dr. Nwawka at the Aunt Martha's Health Center on April 26, 2016 but there was a failure to diagnose the cause for Ms. White's continued complaints of pain and urinary difficulty. Dr. Nwawka minimized Ms. White's described pain scale of 10/10 as "not credible". He failed to establish a diagnosis, and instructed his patient to follow up in five weeks. Thereafter, on May 13, 2016, Ms. White presented again to the Silver Cross Hospital emergency department, complaining of fever, painful urination, frequent urination, and urinary incontinence following hysterectomy. Physical examination identified significant urine in her vagina, and consultation was sought. A CT of the abdomen and pelvis with contrast was ordered due to suspected vesico-vaginal fistula. The study was repeated May 14th, and the impression was that findings were most compatible with a left ureterovaginal fistula and no CT evidence of vesico-vaginal fistula. Urology consultation by Dr. Charles Turk was obtained. Dr. Turk diagnosed a left uretero-vaginal fistula, post-hysterectomy. His plan was to remove Ms. White's Foley catheter, discharge her and within a few days, to proceed with a left retrograde pyelogram and placement of a left double-J ureteral stent.

On May 17th, Ms. White presented to Palos Community Hospital for the planned surgery to be performed by Dr. Charles Turk. A retrograde pyelogram study was performed and showed a fistulous tract from the medial aspect of the lower ureter exiting into the vagina with no contrast passing into the upper ureter. Attempts to place a guide wire into the upper ureter were unsuccessful. Ureteral stenting was unsuccessful. The impression was urinary leakage from the vagina, most likely due to a ureteral-vaginal fistula. Ms. White was discharged May 18, 2016, with a nephrostomy tube in place to drain her kidney and was placed on home healthcare. On July 11, 2016 as a result of her continued complaints of urinary incontinence, Ms. White presented to Palos Community Hospital. A complete ureteral obstruction was diagnosed, and an attempt to recanalize with stent failed. Contrast was not able to pass distally due to the obstruction and there was an inability to pass a guidewire down to the urinary bladder beyond this obstruction. A left nephrostomy tube exchange was successful. Ms. White was discharged with plans for repeating a left nephrostogram in one month.

Ms. White returned to Palos Hospital emergency department on July 28, 2016, complaining of left flank pain at the insertion of her nephrostomy tube. She was evaluated and discharged. In August of 2016, there were two admissions to Palos Hospital with complaints of left flank pain and nephrostomy complications. A distal ureteral complete obstruction remained, despite multiple attempts to recanalize, along with successful left nephrostomy tube exchange. Upon discharge, she remained under the care of Dr. Turk with follow up visits for persistent abdominal pain. On October 18, 2016, a urinary genital tract fistula repair was performed by Dr. Charles Turk at Palos Hospital.

Thereafter, on June 20, 2017, Ms. White underwent a two day admission to Presence St. Joseph Medical Center in Joliet, Illinois for left sided abdominal/ flank pain, dysuria, and urinary frequency. Urinalysis studies were suggestive of infection, and Ms. White was admitted for management of a kidney infection and sepsis. She has remained under the care of Dr. Turk and Associated Urological Specialists LLC in follow up for a

urogenital fistula, and overactive bladder symptoms with urgency, frequency, urinary urgency incontinence, and persistent left-sided flank pain, the site of her previous nephrostomy tube.

In my opinion, within a reasonable degree of medical certainty, more probably true than not, Dr. Chukwudi Nwawka deviated from the standard of care in the treatment of Rhonda White. Based on the elevated creatinine and CT findings in light of a difficult total abdominal hysterectomy-bilateral salpingo oophorectomy procedure, the standard of care required that Dr. Nwawka obtain a timely urological consultation. Dr. Nwawka failed to timely consult with urology and this was a deviation from the standard of care. Given the lab findings and symptoms, Dr. Nwawka deviated from the standard of care in failing to timely diagnose a distal ureteral injury. The standard of care required timely evaluation and diagnosis of the injury to allow for either prompt urological assessment and stenting for a prolonged period of time of 4-6 weeks to allow the ureter to heal, or for the performance of a primary ureteral repair. One of the above chosen options would have likely avoided the eventual formation of a ureterovaginal fistula. However, prompt recognition did not occur in this case and Dr. Nwawka therefore deviated from the standard of care in failing to properly and timely obtain this consultation.

8.      All of the above constitute acts of negligence and conduct that fell below the standard of care in the treatment of Rhonda White. This standard of care was uniform throughout the United States. As a direct and proximate result of these negligent acts and/or omissions, Rhonda White sustained a uretero-vaginal fistula and now suffers from overactive bladder with urgency frequency, urinary urgency incontinence, and persistent left sided flank pain at the site of her previous nephrostomy tube.

9.      That additional reasons may exist or be found to support these opinions upon further development of this case.

## AFFIDAVIT OF ATTORNEY

RANDALL F. PETERS, the attorney for the plaintiff, having been first duly sworn, on oath deposes and states:

1.    That the affiant has consulted and reviewed the facts of this case with a health professional who the affiant reasonably believes:  (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

2.    That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action.

3.    That the affiant has concluded on basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for the filing of this action.

4.    That the profession of the reviewing health professional is a physician licensed to practice medicine in all of its branches.

_____
RANDALL F. PETERS

SUBSCRIBED and SWORN to
before me this ____ 13  day
of    April , 2018

_____
Notary Public

OFFICIAL SEAL
PHOEBE J JIMENEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/12/18

## REPORT OF REVIEWING HEALTH PROFESSIONAL

1.      I am a physician and surgeon, licensed to practice medicine in all of its branches.

2.      I am knowledgeable in the issues of medical care related to the general medical care required for hospitalized patients by a hospitalist, a relevant issue involved in this particular action.

3.      I practice medicine and have practiced medicine within the last 6 years in areas of health care at issue in this particular action.

4.      I am an expert in areas of healthcare and medicine related to the care governing the subject of this case. I am qualified by my education, experience, and training as it relates to the subject of this case.

5.      I have reviewed the medical records of Rhonda White from Silver Cross Hospital, Palos Community Hospital, Presence St. Joseph Medical Center, Aunt Martha's Health Center, CT imaging of the abdomen and pelvis, and Associated Urological Specialists, LLC. I have determined after a review of those medical records and other relevant material involved in this particular case, that there is a reasonable and meritorious cause for the filing of this action.

6.      I am familiar with providing care for a hospitalized patient who has undergone major abdominal surgery, and manifests post operatively abnormal lab studies and ancillary test in accordance with the standard of care.

7.      It is my opinion, based on a reasonable degree of medical certainty, after   review and examination of the material aforestated, that there exists a meritorious and reasonable cause for filing a lawsuit against Manamar Singh MD for the following reasons:

On April 14, 2016, Ms. Rhonda White was admitted to Silver Cross Hospital for a total hysterectomy and bilateral salpingo oophorectomy. Surgery was performed by Dr. Chukwudi Nwawka and assisted by Silver Cross nurse, Ms. Natalie Stranger. During the procedure, peritoneal adhesions were lysed and Dr. Nwawka encountered multiple large uterine fibroids. Postoperatively, Ms. White was followed by Silver Cross hospitalist, Dr. Manamar Singh. Ms. White experienced low urine output, abdominal pain, and acute renal insufficiency, demonstrating an elevated creatinine value of 1.47 mg/dl. A CT of the abdomen and pelvis without contrast was ordered for complaints of upper quadrant pain on April 15. Free intraperitoneal gas was noted along with trace fluid in the pericolic gutters, moderate slightly hyperdense fluid in the cul-de-sac region and fluid around the urinary bladder. Also, a prominent left ureter was noted. Follow up CT was advised with PO and IV contrast. Ms. White was discharged home on April 16, 2016 without urological consultation.

Abdominal pain complaints persisted, and on April 17, 2016, Ms. White presented to the Silver Cross Hospital emergency department. She was readmitted for observation and assessment. Another CT of her abdomen with contrast was ordered by the emergency room physician, Dr. Daniel Checco. Findings reported an "interval development of loculated rim-enhancing fluid collection in the mid line pelvis, most likely an abscess collection or loculated post-surgical fluid collection such as seroma". The study also

revealed a "slight interval worsening of thickening trace fluid in the pericolic gutters, which could be post inflammatory". The presence of a mild proximal left hydroureter was also noted. Laboratory studies were obtained, demonstrating a persistently elevated serum creatinine of 1.35 mg/dl and a urine specific gravity of 1.042. On April 18th, Ms. White was discharged with instructions to follow up with Dr. Nwawka within two to four weeks, and to take Norco at home. Her discharge diagnosis was "abdominal pain".

A follow up visit occurred with Dr. Nwawka at the Aunt Martha's Health Center on April 26, 2016 but there was a failure to diagnose the cause for Ms. White's continued complaints of pain and urinary difficulty. Dr. Nwawka minimized Ms. White's described pain scale of 10/10 as "not credible". He failed to establish a diagnosis, and instructed his patient to follow up in five weeks. Thereafter, on May 13, 2016, Ms. White presented again to the Silver Cross Hospital emergency department, complaining of fever, painful urination, frequent urination, and urinary incontinence following hysterectomy. Physical examination identified significant urine in her vagina, and consultation was sought. A CT of the abdomen and pelvis with contrast was ordered due to suspected vesico-vaginal fistula. The study was repeated May 14th, and the impression was that findings were most compatible with a left ureterovaginal fistula and no CT evidence of vesico-vaginal fistula. Urology consultation by Dr. Charles Turk was obtained. Dr. Turk diagnosed a left uretero-vaginal fistula, post-hysterectomy. His plan was to remove Ms. White's Foley catheter, discharge her and within a few days, to proceed with a left retrograde pyelogram and placement of a left double-J ureteral stent.

On May 17th, Ms. White presented to Palos Community Hospital for the planned surgery to be performed by Dr. Charles Turk. A retrograde pyelogram study was performed and showed a fistulous tract from the medial aspect of the lower ureter exiting into the vagina with no contrast passing into the upper ureter. Attempts to place a guide wire into the upper ureter were unsuccessful. Ureteral stenting was unsuccessful. The impression was urinary leakage from the vagina, most likely due to a ureteral-vaginal fistula. Ms. White was discharged May 18, 2016, with a nephrostomy tube in place to drain her kidney and was placed on home healthcare. On July 11, 2016 as a result of her continued complaints of urinary incontinence, Ms. White presented to Palos Community Hospital. A complete ureteral obstruction was diagnosed, and an attempt to recanalize with stent failed. Contrast was not able to pass distally due to the obstruction and there was an inability to pass a guidewire down to the urinary bladder beyond this obstruction. A left nephrostomy tube exchange was successful. Ms. White was discharged with plans for repeating a left nephrostogram in one month.

Ms. White returned to Palos Hospital emergency department on July 28, 2016, complaining of left flank pain at the insertion of her nephrostomy tube. She was evaluated and discharged. In August of 2016, there were two admissions to Palos Hospital with complaints of left flank pain and nephrostomy complications. A distal ureteral complete obstruction remained, despite multiple attempts to recanalize, along with successful left nephrostomy tube exchange. Upon discharge, she remained under the care of Dr. Turk with follow up visits for persistent abdominal pain. On October 18, 2016, a urinary genital tract fistula repair was performed by Dr. Charles Turk at Palos Hospital.

Thereafter, on June 20, 2017, Ms. White underwent a two day admission to Presence St. Joseph Medical Center in Joliet, Illinois for left sided abdominal/ flank pain, dysuria, and urinary frequency. Urinalysis studies were suggestive of infection, and Ms. White

was admitted for management of a kidney infection and sepsis. She has remained under the care of Dr. Turk and Associated Urological Specialists LLC in follow up for a urogenital fistula, and overactive bladder symptoms with urgency, frequency, urinary urgency incontinence, and persistent left-sided flank pain, the site of her previous nephrostomy tube.

In my opinion, within a reasonable degree of medical certainty, more probably true than not, Manamar Singh MD, deviated from the standard of care in the treatment of Rhonda White. Based on her acutely elevated creatinine and CT findings in light of the surgery that was performed, Dr. Singh carelessly and negligent failed to adequately assess Ms. White and provide a differential diagnosis to include a renal system injury. The standard of care required that Manamar Singh MD, have a level of suspicion of operative trauma to the renal system which would include the kidney urethra, ureter, and bladder. Ms. White was a patient without signs of pre operative renal system disease. The standard of care required Dr. Singh generate a differential diagnosis that included renal system trauma, and communicate to Ms. White's attending physician, Dr. Nwawka, recommending the need to obtain either urology or nephrology consultation to assess and evaluate Ms. White's renal system, to rule out renal system injury. She was a patient a risk for renal system injury, and the standard of care required such timely consultation. This was not done by Dr. Singh and was a deviation from the standard of care. Dr. Singh further deviated from the standard of care in ordering an untimely discharge of Ms. White from the hospital when her lab studies had not returned back to normal baseline. Before her discharge the standard of care required a continued evaluation of her abnormal creatinine values to rule out an injury having occurred to the renal system. This was not done by Dr. Singh and was a deviation from the standard of care.

8.    All of the above constitute acts of negligence and conduct that fell below the standard of care in the treatment of Rhonda White. This standard of care was uniform throughout the United States. As a direct and proximate result of these negligent acts and/or omissions, Rhonda White sustained a uretero-vaginal fistula and now suffers from overactive bladder with urgency frequency, urinary urgency incontinence, and persistent left sided flank pain at the site of her previous nephrostomy tube.

9.    That additional reasons may exist or be found to support these opinions upon further development of this case.

## AFFIDAVIT OF ATTORNEY

RANDALL F. PETERS, the attorney for the plaintiff, having been first duly sworn, on oath deposes and states:

1.     That the affiant has consulted and reviewed the facts of this case with a health professional who the affiant reasonably believes:  (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

2.     That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action.

3.     That the affiant has concluded on basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for the filing of this action.

4.     That the profession of the reviewing health professional is a physician licensed to practice medicine in all of its branches.

_____
RANDALL F. PETERS

SUBSCRIBED and SWORN to
before me this _____13_ day
of _____April_, 2018

_____
Notary Public

OFFICIAL SEAL
PHOEBE J JIMENEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/12/18

## REPORT OF REVIEWING HEALTH PROFESSIONAL

1.     I am a physician and surgeon, licensed to practice medicine in all of its branches.

2.     I am knowledgeable in the issues of medical care related to ureteral/vaginal tract injury, in the relevant issues involved in this particular action.

3.     I practice medicine and have practiced medicine within the last 6 years in areas of health care at issue in this particular action.

4.     I am an expert in areas of healthcare and medicine related to the care governing the subject of this case. I am qualified by my education, experience, and training as it relates to the subject of this case.

5.     I have reviewed the medical records of Rhonda White from Silver Cross Hospital, Palos Community Hospital, Presence St. Joseph Medical Center, Aunt Martha's Health Center, CT imaging of the abdomen and pelvis, and Associated Urological Specialists, LLC. I have determined after a review of those medical records and other relevant material involved in this particular case, that there is a reasonable and meritorious cause for the filing of this action.

6.     I am familiar with ureteral /vaginal injury, fistula formation post hysterectomy, and the treatment of same, in accordance with the standard of care.

7.     It is my opinion, based on a reasonable degree of medical certainty, after  review and examination of the material aforestated, that there exists a meritorious and reasonable cause for filing a lawsuit against Silver Cross Hospital and Medical Centers for the following reasons:

On April 14, 2016, Ms. Rhonda White was admitted to Silver Cross Hospital for a total hysterectomy and bilateral salpingo oophorectomy.  Surgery was performed by Dr. Chukwudi Nwawka and assisted by Silver Cross nurse, Ms. Natalie Stranger.  During the procedure, peritoneal adhesions were lysed and Dr. Nwawka encountered multiple large uterine fibroids.  Postoperatively, Ms. White was followed by Silver Cross hospitalist, Dr. Manamar Singh. Ms. White experienced low urine output, abdominal pain, and acute renal insufficiency, demonstrating an elevated creatinine value of 1.47 mg/dl.  A CT of the abdomen and pelvis without contrast was ordered for complaints of upper quadrant pain on April 15. Free intraperitoneal gas was noted along with trace fluid in the pericolic gutters, moderate slightly hyperdense fluid in the cul-de-sac region and fluid around the urinary bladder. Also, a prominent left ureter was noted.  Follow up CT was advised with PO and IV contrast. Ms. White was discharged home on April 16, 2016 without urological consultation.

Abdominal pain complaints persisted, and on April 17, 2016, Ms. White presented to the Silver Cross Hospital emergency department. She was readmitted for observation and assessment. Another CT of her abdomen with contrast was ordered by the emergency room physician, Dr. Daniel Checco. Findings reported an "interval development of loculated rim-enhancing fluid collection in the mid line pelvis, most likely an abscess collection or loculated post-surgical fluid collection such as seroma".  The study also revealed a "slight interval worsening of thickening trace fluid in the pericolic gutters, which could be post inflammatory". The presence of a mild proximal left hydroureter was

also noted. Laboratory studies were obtained, demonstrating a persistently elevated serum creatinine of 1.35 mg/dl and a urine specific gravity of 1.042. On April 18th, Ms. White was discharged with instructions to follow up with Dr. Nwawka within two to four weeks, and to take Norco at home. Her discharge diagnosis was "abdominal pain".

A follow up visit occurred with Dr. Nwawka at the Aunt Martha's Health Center on April 26, 2016 but there was a failure to diagnose the cause for Ms. White's continued complaints of pain and urinary difficulty. Dr. Nwawka minimized Ms. White's described pain scale of 10/10 as "not credible". He failed to establish a diagnosis, and instructed his patient to follow up in five weeks. Thereafter, on May 13, 2016, Ms. White presented again to the Silver Cross Hospital emergency department, complaining of fever, painful urination, frequent urination, and urinary incontinence following hysterectomy. Physical examination identified significant urine in her vagina, and consultation was sought. A CT of the abdomen and pelvis with contrast was ordered due to suspected vesico-vaginal fistula. The study was repeated May 14th, and the impression was that findings were most compatible with a left ureterovaginal fistula and no CT evidence of vesico-vaginal fistula. Urology consultation by Dr. Charles Turk was obtained. Dr. Turk diagnosed a left uretero-vaginal fistula, post-hysterectomy. His plan was to remove Ms. White's Foley catheter, discharge her and within a few days, to proceed with a left retrograde pyelogram and placement of a left double-J ureteral stent.

On May 17th, Ms. White presented to Palos Community Hospital for the planned surgery to be performed by Dr. Charles Turk. A retrograde pyelogram study was performed and showed a fistulous tract from the medial aspect of the lower ureter exiting into the vagina with no contrast passing into the upper ureter. Attempts to place a guide wire into the upper ureter were unsuccessful. Ureteral stenting was unsuccessful. The impression was urinary leakage from the vagina, most likely due to a ureteral-vaginal fistula. Ms. White was discharged May 18, 2016, with a nephrostomy tube in place to drain her kidney and was placed on home healthcare. On July 11, 2016 as a result of her continued complaints of urinary incontinence, Ms. White presented to Palos Community Hospital. A complete ureteral obstruction was diagnosed, and an attempt to recanalize with stent failed. Contrast was not able to pass distally due to the obstruction and there was an inability to pass a guidewire down to the urinary bladder beyond this obstruction. A left nephrostomy tube exchange was successful. Ms. White was discharged with plans for repeating a left nephrostogram in one month.

Ms. White returned to Palos Hospital emergency department on July 28, 2016, complaining of left flank pain at the insertion of her nephrostomy tube. She was evaluated and discharged. In August of 2016, there were two admissions to Palos Hospital with complaints of left flank pain and nephrostomy complications. A distal ureteral complete obstruction remained, despite multiple attempts to recanalize, along with successful left nephrostomy tube exchange. Upon discharge, she remained under the care of Dr. Turk with follow up visits for persistent abdominal pain. On October 18, 2016, a urinary genital tract fistula repair was performed by Dr. Charles Turk at Palos Hospital.

Thereafter, on June 20, 2017, Ms. White underwent a two day admission to Presence St. Joseph Medical Center in Joliet, Illinois for left sided abdominal/flank pain, dysuria, and urinary frequency. Urinalysis studies were suggestive of infection, and Ms. White was admitted for management of a kidney infection and sepsis. She has remained under the care of Dr. Turk and Associated Urological Specialists LLC in follow up for a

urogenital fistula, and overactive bladder symptoms with urgency, frequency, urinary urgency incontinence, and persistent left-sided flank pain, the site of her previous nephrostomy tube.

In my opinion, within a reasonable degree of medical certainty, more probably true than not, Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of Dr. Chukwudi Nwawka deviated from the standard of care in the treatment of Rhonda White. Based on the elevated creatinine and CT findings in light of a difficult total abdominal hysterectomy-bilateral salpingo oophorectomy procedure, the standard of care required that Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of Dr. Nwawka obtain a timely urological consultation. Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of Dr. Nwawka failed to timely consult with urology and this was a deviation from the standard of care. Given the lab findings and symptoms, Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of Dr. Nwawka deviated from the standard of care in failing to timely diagnose a distal ureteral injury. The standard of care required timely evaluation and diagnosis of the injury to allow for either prompt urological assessment and stenting for a prolonged period of time of 4-6 weeks to allow the ureter to heal, or for the performance of a primary ureteral repair. One of the above chosen options would have likely avoided the eventual formation of a ureterovaginal fistula. However, prompt recognition did not occur in this case and Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of Dr. Nwawka therefore deviated from the standard of care in failing to properly and timely obtain this consultation.

8.     All of the above constitute acts of negligence and conduct that fell below the standard of care in the treatment of Rhonda White. This standard of care was uniform throughout the United States. As a direct and proximate result of these negligent acts and/or omissions, Rhonda White sustained a uretero-vaginal fistula and now suffers from overactive bladder with urgency frequency, urinary urgency incontinence, and persistent left sided flank pain at the site of her previous nephrostomy tube.

9.     That additional reasons may exist or be found to support these opinions upon further development of this case.

## AFFIDAVIT OF ATTORNEY

RANDALL F. PETERS, the attorney for the plaintiff, having been first duly sworn, on oath deposes and states:

1.    That the affiant has consulted and reviewed the facts of this case with a health professional who the affiant reasonably believes:   (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

2.    That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action.

3.    That the affiant has concluded on basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for the filing of this action.

4.    That the profession of the reviewing health professional is a physician licensed to practice medicine in all of its branches.

RANDALL F. PETERS

SUBSCRIBED and SWORN to
before me this _____ 13_ day
of _April_, 2018

Notary Public

OFFICIAL SEAL
PHOEBE J JIMENEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/12/18

## REPORT OF REVIEWING HEALTH PROFESSIONAL

1.    I am a physician and surgeon, licensed to practice medicine in all of its branches.

2.    I am knowledgeable in the issues of medical care related to the general medical care required for hospitalized patients by a hospitalist, a relevant issue involved in this particular action.

3.    I practice medicine and have practiced medicine within the last 6 years in areas of health care at issue in this particular action.

4.    I am an expert in areas of healthcare and medicine related to the care governing the subject of this case. I am qualified by my education, experience, and training as it relates to the subject of this case.

5.    I have reviewed the medical records of Rhonda White from Silver Cross Hospital, Palos Community Hospital, Presence St. Joseph Medical Center, Aunt Martha's Health Center, CT imaging of the abdomen and pelvis, and Associated Urological Specialists, LLC. I have determined after a review of those medical records and other relevant material involved in this particular case, that there is a reasonable and meritorious cause for the filing of this action.

6.    I am familiar with providing care for a hospitalized patient who has undergone major abdominal surgery, and manifests post operatively abnormal lab studies and ancillary test in accordance with the standard of care.

7.    It is my opinion, based on a reasonable degree of medical certainty, after   review and examination of the material aforestated, that there exists a meritorious and reasonable cause for filing a lawsuit against Silver Cross Hospital and Medical Centers for the following reasons:

On April 14, 2016, Ms. Rhonda White was admitted to Silver Cross Hospital for a total hysterectomy and bilateral salpingo oophorectomy. Surgery was performed by Dr. Chukwudi Nwawka and assisted by Silver Cross nurse, Ms. Natalie Stranger. During the procedure, peritoneal adhesions were lysed and Dr. Nwawka encountered multiple large uterine fibroids. Postoperatively, Ms. White was followed by Silver Cross hospitalist, Dr. Manamar Singh. Ms. White experienced low urine output, abdominal pain, and acute renal insufficiency, demonstrating an elevated creatinine value of 1.47 mg/dl. A CT of the abdomen and pelvis without contrast was ordered for complaints of upper quadrant pain on April 15. Free intraperitoneal gas was noted along with trace fluid in the pericolic gutters, moderate slightly hyperdense fluid in the cul-de-sac region and fluid around the urinary bladder. Also, a prominent left ureter was noted. Follow up CT was advised with PO and IV contrast. Ms. White was discharged home on April 16, 2016 without urological consultation.

Abdominal pain complaints persisted, and on April 17, 2016, Ms. White presented to the Silver Cross Hospital emergency department. She was readmitted for observation and assessment. Another CT of her abdomen with contrast was ordered by the emergency room physician, Dr. Daniel Checco. Findings reported an "interval development of loculated rim-enhancing fluid collection in the mid line pelvis, most likely an abscess collection or loculated post-surgical fluid collection such as seroma". The study also

revealed a "slight interval worsening of thickening trace fluid in the pericolic gutters, which could be post inflammatory". The presence of a mild proximal left hydroureter was also noted. Laboratory studies were obtained, demonstrating a persistently elevated serum creatinine of 1.35 mg/dl and a urine specific gravity of 1.042. On April 18th, Ms. White was discharged with instructions to follow up with Dr. Nwawka within two to four weeks, and to take Norco at home. Her discharge diagnosis was "abdominal pain".

A follow up visit occurred with Dr. Nwawka at the Aunt Martha's Health Center on April 26, 2016 but there was a failure to diagnose the cause for Ms. White's continued complaints of pain and urinary difficulty. Dr. Nwawka minimized Ms. White's described pain scale of 10/10 as "not credible". He failed to establish a diagnosis, and instructed his patient to follow up in five weeks. Thereafter, on May 13, 2016, Ms. White presented again to the Silver Cross Hospital emergency department, complaining of fever, painful urination, frequent urination, and urinary incontinence following hysterectomy. Physical examination identified significant urine in her vagina, and consultation was sought. A CT of the abdomen and pelvis with contrast was ordered due to suspected vesico-vaginal fistula. The study was repeated May 14th, and the impression was that findings were most compatible with a left ureterovaginal fistula and no CT evidence of vesico-vaginal fistula. Urology consultation by Dr. Charles Turk was obtained. Dr. Turk diagnosed a left uretero-vaginal fistula, post-hysterectomy. His plan was to remove Ms. White's Foley catheter, discharge her and within a few days, to proceed with a left retrograde pyelogram and placement of a left double-J ureteral stent.

On May 17th, Ms. White presented to Palos Community Hospital for the planned surgery to be performed by Dr. Charles Turk. A retrograde pyelogram study was performed and showed a fistulous tract from the medial aspect of the lower ureter exiting into the vagina with no contrast passing into the upper ureter. Attempts to place a guide wire into the upper ureter were unsuccessful. Ureteral stenting was unsuccessful. The impression was urinary leakage from the vagina, most likely due to a ureteral-vaginal fistula. Ms. White was discharged May 18, 2016, with a nephrostomy tube in place to drain her kidney and was placed on home healthcare. On July 11, 2016 as a result of her continued complaints of urinary incontinence, Ms. White presented to Palos Community Hospital. A complete ureteral obstruction was diagnosed, and an attempt to recanalize with stent failed. Contrast was not able to pass distally due to the obstruction and there was an inability to pass a guidewire down to the urinary bladder beyond this obstruction. A left nephrostomy tube exchange was successful. Ms. White was discharged with plans for repeating a left nephrostogram in one month.

Ms. White returned to Palos Hospital emergency department on July 28, 2016, complaining of left flank pain at the insertion of her nephrostomy tube. She was evaluated and discharged. In August of 2016, there were two admissions to Palos Hospital with complaints of left flank pain and nephrostomy complications. A distal ureteral complete obstruction remained, despite multiple attempts to recanalize, along with successful left nephrostomy tube exchange. Upon discharge, she remained under the care of Dr. Turk with follow up visits for persistent abdominal pain. On October 18, 2016, a urinary genital tract fistula repair was performed by Dr. Charles Turk at Palos Hospital.

Thereafter, on June 20, 2017, Ms. White underwent a two day admission to Presence St. Joseph Medical Center in Joliet, Illinois for left sided abdominal/ flank pain, dysuria, and urinary frequency. Urinalysis studies were suggestive of infection, and Ms. White

was admitted for management of a kidney infection and sepsis. She has remained under the care of Dr. Turk and Associated Urological Specialists LLC in follow up for a urogenital fistula, and overactive bladder symptoms with urgency, frequency, urinary urgency incontinence, and persistent left-sided flank pain, the site of her previous nephrostomy tube.

In my opinion, within a reasonable degree of medical certainty, more probably true than not, Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of its agent/employee Manamar Singh MD, deviated from the standard of care in the treatment of Rhonda White. Based on her acutely elevated creatinine and CT findings in light of the surgery that was performed, Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of its agent/employee Dr. Singh carelessly and negligent failed to adequately assess Ms. White and provide a differential diagnosis to include a renal system injury. The standard of care required that Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of its agent/employee Manamar Singh MD, have a level of suspicion of operative trauma to the renal system which would include the kidney urethra, ureter, and bladder. Ms. White was a patient without signs of pre operative renal system disease. The standard of care required Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of its agent/employee Dr. Singh generate a differential diagnosis that included renal system trauma, and communicate to Ms. White's attending physician, Dr. Nwawka, recommending the need to obtain either urology or nephrology consultation to assess and evaluate Ms. White's renal system, to rule out renal system injury. She was a patient a risk for renal system injury, and the standard of care required such timely consultation. This was not done by Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of its agent/employee Dr. Singh and was a deviation from the standard of care. Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of its agent/employee Dr. Singh further deviated from the standard of care in ordering an untimely discharge of Ms. White from the hospital when her lab studies had not returned back to normal baseline. Before her discharge the standard of care required a continued evaluation of her abnormal creatinine values to rule out an injury having occurred to the renal system. This was not done by Silver Cross Hospital and Medical Centers by and through the acts and/or omissions of its agent/employee Dr. Singh and was a deviation from the standard of care.

8. All of the above constitute acts of negligence and conduct that fell below the standard of care in the treatment of Rhonda White. This standard of care was uniform throughout the United States. As a direct and proximate result of these negligent acts and/or omissions, Rhonda White sustained a uretero-vaginal fistula and now suffers from overactive bladder with urgency frequency, urinary urgency incontinence, and persistent left sided flank pain at the site of her previous nephrostomy tube.

9. That additional reasons may exist or be found to support these opinions upon further development of this case.

## AFFIDAVIT OF ATTORNEY

RANDALL F. PETERS, the attorney for the plaintiff, having been first duly sworn, on oath deposes and states:

1.    That the affiant has consulted and reviewed the facts of this case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

2.    That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action.

3.    That the affiant has concluded on basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for the filing of this action.

4.    That the profession of the reviewing health professional is a physician licensed to practice medicine in all of its branches.

_____
RANDALL F. PETERS

SUBSCRIBED and SWORN to
before me this _____ 13 _ day
of __ April , 2018

_____
Notary Public

OFFICIAL SEAL
PHOEBE J JIMENEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/12/18

## REPORT OF REVIEWING HEALTH PROFESSIONAL

1.      I am a physician and surgeon, licensed to practice medicine in all of its branches.

2.      I am knowledgeable in the issues of medical care related to the general medical care required for hospitalized patients by a hospitalist, a relevant issue involved in this particular action.

3.      I practice medicine and have practiced medicine within the last 6 years in areas of health care at issue in this particular action.

4.      I am an expert in areas of healthcare and medicine related to the care governing the subject of this case. I am qualified by my education, experience, and training as it relates to the subject of this case.

5.      I have reviewed the medical records of Rhonda White from Silver Cross Hospital, Palos Community Hospital, Presence St. Joseph Medical Center, Aunt Martha's Health Center, CT imaging of the abdomen and pelvis, and Associated Urological Specialists, LLC. I have determined after a review of those medical records and other relevant material involved in this particular case, that there is a reasonable and meritorious cause for the filing of this action.

6.      I am familiar with providing care for a hospitalized patient who has undergone major abdominal surgery, and manifests post operatively abnormal lab studies and ancillary test in accordance with the standard of care.

7.      It is my opinion, based on a reasonable degree of medical certainty, after review and examination of the material aforestated, that there exists a meritorious and reasonable cause for filing a lawsuit against Hospitalist Consultants Group S.C. for the following reasons:

On April 14, 2016, Ms. Rhonda White was admitted to Silver Cross Hospital for a total hysterectomy and bilateral salpingo oophorectomy. Surgery was performed by Dr. Chukwudi Nwawka and assisted by Silver Cross nurse, Ms. Natalie Stranger. During the procedure, peritoneal adhesions were lysed and Dr. Nwawka encountered multiple large uterine fibroids. Postoperatively, Ms. White was followed by Silver Cross hospitalist, Dr. Manamar Singh. Ms. White experienced low urine output, abdominal pain, and acute renal insufficiency, demonstrating an elevated creatinine value of 1.47 mg/dl. A CT of the abdomen and pelvis without contrast was ordered for complaints of upper quadrant pain on April 15. Free intraperitoneal gas was noted along with trace fluid in the pericolic gutters, moderate slightly hyperdense fluid in the cul-de-sac region and fluid around the urinary bladder. Also, a prominent left ureter was noted. Follow up CT was advised with PO and IV contrast. Ms. White was discharged home on April 16, 2016 without urological consultation.

Abdominal pain complaints persisted, and on April 17, 2016, Ms. White presented to the Silver Cross Hospital emergency department. She was readmitted for observation and assessment. Another CT of her abdomen with contrast was ordered by the emergency room physician, Dr. Daniel Checco. Findings reported an "interval development of loculated rim-enhancing fluid collection in the mid line pelvis, most likely an abscess collection or loculated post-surgical fluid collection such as seroma". The study also

revealed a "slight interval worsening of thickening trace fluid in the pericolic gutters, which could be post inflammatory". The presence of a mild proximal left hydroureter was also noted. Laboratory studies were obtained, demonstrating a persistently elevated serum creatinine of 1.35 mg/dl and a urine specific gravity of 1.042. On April 18th, Ms. White was discharged with instructions to follow up with Dr. Nwawka within two to four weeks, and to take Norco at home. Her discharge diagnosis was "abdominal pain".

A follow up visit occurred with Dr. Nwawka at the Aunt Martha's Health Center on April 26, 2016 but there was a failure to diagnose the cause for Ms. White's continued complaints of pain and urinary difficulty. Dr. Nwawka minimized Ms. White's described pain scale of 10/10 as "not credible". He failed to establish a diagnosis, and instructed his patient to follow up in five weeks. Thereafter, on May 13, 2016, Ms. White presented again to the Silver Cross Hospital emergency department, complaining of fever, painful urination, frequent urination, and urinary incontinence following hysterectomy. Physical examination identified significant urine in her vagina, and consultation was sought. A CT of the abdomen and pelvis with contrast was ordered due to suspected vesico-vaginal fistula. The study was repeated May 14th, and the impression was that findings were most compatible with a left ureterovaginal fistula and no CT evidence of vesico-vaginal fistula. Urology consultation by Dr. Charles Túrk was obtained. Dr. Turk diagnosed a left uretero-vaginal fistula, post-hysterectomy. His plan was to remove Ms. White's Foley catheter, discharge her and within a few days, to proceed with a left retrograde pyelogram and placement of a left double-J ureteral stent.

On May 17th, Ms. White presented to Palos Community Hospital for the planned surgery to be performed by Dr. Charles Turk. A retrograde pyelogram study was performed and showed a fistulous tract from the medial aspect of the lower ureter exiting into the vagina with no contrast passing into the upper ureter. Attempts to place a guide wire into the upper ureter were unsuccessful. Ureteral stenting was unsuccessful. The impression was urinary leakage from the vagina, most likely due to a ureteral-vaginal fistula. Ms. White was discharged May 18, 2016, with a nephrostomy tube in place to drain her kidney and was placed on home healthcare. On July 11, 2016 as a result of her continued complaints of urinary incontinence, Ms. White presented to Palos Community Hospital. A complete ureteral obstruction was diagnosed, and an attempt to recanalize with stent failed. Contrast was not able to pass distally due to the obstruction and there was an inability to pass a guidewire down to the urinary bladder beyond this obstruction. A left nephrostomy tube exchange was successful. Ms. White was discharged with plans for repeating a left nephrostogram in one month.

Ms. White returned to Palos Hospital emergency department on July 28, 2016, complaining of left flank pain at the insertion of her nephrostomy tube. She was evaluated and discharged. In August of 2016, there were two admissions to Palos Hospital with complaints of left flank pain and nephrostomy complications. A distal ureteral complete obstruction remained, despite multiple attempts to recanalize, along with successful left nephrostomy tube exchange. Upon discharge, she remained under the care of Dr. Turk with follow up visits for persistent abdominal pain. On October 18, 2016, a urinary genital tract fistula repair was performed by Dr. Charles Turk at Palos Hospital.

Thereafter, on June 20, 2017, Ms. White underwent a two day admission to Presence St. Joseph Medical Center in Joliet, Illinois for left sided abdominal/ flank pain, dysuria, and urinary frequency. Urinalysis studies were suggestive of infection, and Ms. White

was admitted for management of a kidney infection and sepsis. She has remained under the care of Dr. Turk and Associated Urological Specialists LLC in follow up for a urogenital fistula, and overactive bladder symptoms with urgency, frequency, urinary urgency incontinence, and persistent left-sided flank pain, the site of her previous nephrostomy tube.

In my opinion, within a reasonable degree of medical certainty, more probably true than not, Hospitalist Consultants Group S.C. by and through the acts and/or omissions of its agent/employee Manamar Singh MD, deviated from the standard of care in the treatment of Rhonda White. Based on her acutely elevated creatinine and CT findings in light of the surgery that was performed, Hospitalist Consultants Group S.C. by and through the acts and/or omissions of its agent/employee Dr. Singh carelessly and negligent failed to adequately assess Ms. White and provide a differential diagnosis to include a renal system injury. The standard of care required that Hospitalist Consultants Group S.C. by and through the acts and/or omissions of its agent/employee Manamar Singh MD, have a level of suspicion of operative trauma to the renal system which would include the kidney urethra, ureter, and bladder. Ms. White was a patient without signs of pre operative renal system disease. The standard of care required Hospitalist Consultants Group S.C. by and through the acts and/or omissions of its agent/employee Dr. Singh generate a differential diagnosis that included renal system trauma, and communicate to Ms. White's attending physician, Dr. Nwawka, recommending the need to obtain either urology or nephrology consultation to assess and evaluate Ms. White's renal system, to rule out renal system injury. She was a patient a risk for renal system injury, and the standard of care required such timely consultation. This was not done by Hospitalist Consultants Group S.C. by and through the acts and/or omissions of its agent/employee Dr. Singh and was a deviation from the standard of care. Hospitalist Consultants Group S.C. by and through the acts and/or omissions of its agent/employee Dr. Singh further deviated from the standard of care in ordering an untimely discharge of Ms. White from the hospital when her lab studies had not returned back to normal baseline. Before her discharge the standard of care required a continued evaluation of her abnormal creatinine values to rule out an injury having occurred to the renal system. This was not done by Hospitalist Consultants Group S.C. by and through the acts and/or omissions of its agent/employee Dr. Singh and was a deviation from the standard of care.

8.    All of the above constitute acts of negligence and conduct that fell below the standard of care in the treatment of Rhonda White. This standard of care was uniform throughout the United States. As a direct and proximate result of these negligent acts and/or omissions, Rhonda White sustained a uretero-vaginal fistula and now suffers from overactive bladder with urgency frequency, urinary urgency incontinence, and persistent left sided flank pain at the site of her previous nephrostomy tube.

9.    That additional reasons may exist or be found to support these opinions upon further development of this case.

## AFFIDAVIT OF ATTORNEY

RANDALL F. PETERS, the attorney for the plaintiff, having been first duly sworn, on oath deposes and states:

1.     That the affiant has consulted and reviewed the facts of this case with a health professional who the affiant reasonably believes:  (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

2.     That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action.

3.     That the affiant has concluded on basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for the filing of this action.

4.     That the profession of the reviewing health professional is a physician licensed to practice medicine in all of its branches.

_____
RANDALL F. PETERS

SUBSCRIBED and SWORN to
before me this _____13_ day
of _____April_, 2018

_____
Notary Public

OFFICIAL SEAL
PHOEBE J JIMENEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/12/18

## REPORT OF REVIEWING HEALTH PROFESSIONAL

1.     I am a physician and surgeon, licensed to practice medicine in all of its branches.

2.     I am knowledgeable in the issues of medical care related to the optimizing safe surgical care for major operations required of a hospital, a relevant issue involved in this particular action.

3.     I practice medicine and have practiced medicine within the last 6 years in areas of health care at issue in this particular action.

4.     I am an expert in areas of healthcare and medicine related to the care governing the subject of this case.  I am qualified by my education, experience, and training as it relates to the subject of this case.

5.     I have reviewed the medical records of Rhonda White from Silver Cross Hospital, Palos Community Hospital, Presence St. Joseph Medical Center, Aunt Martha's Health Center, CT imaging of the abdomen and pelvis, and Associated Urological Specialists, LLC. I have determined after a review of those medical records and other relevant material involved in this particular case, that there is a reasonable and meritorious cause for the filing of this action.

6.     I am familiar with providing care for a patient undergoing major abdominal surgery, in accordance with the standard of care.

7.     It is my opinion, based on a reasonable degree of medical certainty, after   review and examination of the material aforestated, that there exists a meritorious and reasonable cause for filing a lawsuit against Silver Cross Hospital and Medical Centers for the following reasons:

On April 14, 2016, Ms. Rhonda White was admitted to Silver Cross Hospital for a total hysterectomy and bilateral salpingo oophorectomy, major abdominal surgery.  Surgery was performed by Dr. Chukwudi Nwawka, who requested Silver Cross Hospital provide a surgical assistant for this operation which also included the lysis of adhesions.  the gyne pre admission order, completed prior to surgery identified Ms. White's admission diagnosis as abnormal uterine bleeding, peritoneal adhesion, and anemia.  In response, Sillver Cross Hospital provided a nurse, Ms. Natalie Stranger as the surgical assistant. During the procedure, peritoneal adhesions were lysed and Dr. Nwawka encountered multiple large uterine fibroids. Postoperatively, Ms. White experienced low urine output, abdominal pain, and acute renal insufficiency, demonstrating an elevated creatinine value of 1.47 mg/dl.  A CT of the abdomen and pelvis without contrast was ordered for complaints of upper quadrant pain on April 15. Free intraperitoneal gas was noted along with trace fluid in the pericolic gutters, moderate slightly hyperdense fluid in the cul-de-sac region and fluid around the urinary bladder. Also, a prominent left ureter was noted. Follow up CT was advised with PO and IV contrast. Ms. White was discharged home on April 16, 2016 without urological consultation.

Abdominal pain complaints persisted, and on April 17, 2016, Ms. White presented to the Silver Cross Hospital emergency department. She was readmitted for observation and assessment. Another CT of her abdomen with contrast was ordered. Findings reported an "interval development of loculated rim-enhancing fluid collection in the mid line

pelvis, most likely an abscess collection or loculated post-surgical fluid collection such as seroma". The study also revealed a "slight interval worsening of thickening trace fluid in the pericolic gutters, which could be post inflammatory". The presence of a mild proximal left hydroureter was also noted. Laboratory studies were obtained, demonstrating a persistently elevated serum creatinine of 1.35 mg/dl and a urine specific gravity of 1.042. On April 18[th], Ms. White was discharged. Her discharge diagnosis was "abdominal pain".

A follow up visit occurred with Dr. Nwawka at the Aunt Martha's Health Center on April 26, 2016 but there was a failure to diagnose the cause for Ms. White's continued complaints of pain and urinary difficulty. Dr. Nwawka minimized Ms. White's described pain scale of 10/10 as "not credible". He failed to establish a diagnosis, and instructed his patient to follow up in five weeks. Thereafter, on May 13, 2016, Ms. White presented again to the Silver Cross Hospital emergency department, complaining of fever, painful urination, frequent urination, and urinary incontinence following hysterectomy. Physical examination identified significant urine in her vagina, and consultation was sought. A CT of the abdomen and pelvis with contrast was ordered due to suspected vesico-vaginal fistula. The study was repeated May 14th, and the impression was that findings were most compatible with a left ureterovaginal fistula and no CT evidence of vesico-vaginal fistula. Urology consultation by Dr. Charles Turk was obtained. Dr. Turk diagnosed a left uretero-vaginal fistula, post-hysterectomy. His plan was to remove Ms. White's Foley catheter, discharge her and within a few days, to proceed with a left retrograde pyelogram and placement of a left double-J ureteral stent.

On May 17th, Ms. White presented to Palos Community Hospital for the planned surgery to be performed by Dr. Charles Turk. A retrograde pyelogram study was performed and showed a fistulous tract from the medial aspect of the lower ureter exiting into the vagina with no contrast passing into the upper ureter. Attempts to place a guide wire into the upper ureter were unsuccessful. Ureteral stenting was unsuccessful. The impression was urinary leakage from the vagina, most likely due to a ureteral-vaginal fistula. Ms. White was discharged May 18, 2016, with a nephrostomy tube in place to drain her kidney and was placed on home healthcare. On July 11, 2016 as a result of her continued complaints of urinary incontinence, Ms. White presented to Palos Community Hospital. A complete ureteral obstruction was diagnosed, and an attempt to recanalize with stent failed. Contrast was not able to pass distally due to the obstruction and there was an inability to pass a guidewire down to the urinary bladder beyond this obstruction. A left nephrostomy tube exchange was successful. Ms. White was discharged with plans for repeating a left nephrostogram in one month.

Ms. White returned to Palos Hospital emergency department on July 28, 2016, complaining of left flank pain at the insertion of her nephrostomy tube. She was evaluated and discharged. In August of 2016, there were two admissions to Palos Hospital with complaints of left flank pain and nephrostomy complications. A distal ureteral complete obstruction remained, despite multiple attempts to recanalize, along with successful left nephrostomy tube exchange. Upon discharge, she remained under the care of Dr. Turk with follow up visits for persistent abdominal pain. On October 18, 2016, a urinary genital tract fistula repair was performed by Dr. Charles Turk at Palos Hospital.

Thereafter, on June 20, 2017, Ms. White underwent a two day admission to Presence St. Joseph Medical Center in Joliet, Illinois for left sided abdominal/ flank pain, dysuria, and urinary frequency. Urinalysis studies were suggestive of infection, and Ms. White was admitted for management of a kidney infection and sepsis. She has remained under the care of Dr. Turk and Associated Urological Specialists LLC in follow up for a urogenital fistula, and overactive bladder symptoms with urgency, frequency, urinary urgency incontinence, and persistent left-sided flank pain, the site of her previous nephrostomy tube.

In my opinion, within a reasonable degree of medical certainty, more probably true than not, Silver Cross Hospital and Medical Centers, deviated from the standard of care in the treatment of Rhonda White. Ms. White underwent major abdominal surgery for her condition of ill being. The standard of care required that the complexity of surgery or the patient's condition requires the assistance of one or more physicians to provide the patient with safest care possible. This was a position taken by the American College of Obstetricians and Gynecologist, approved by the executive board: January 2016. The standard of care called for the assistance of another physician to optimize safe surgical care. This was not provided Ms. White by Silver Cross Hospital and Medical Centers and was a deviation from the standard of care. A first assistant provides exposure, maintains hemostasis and other technical functions. Specialized training and education to provide the standard of patient care is required of a first assistant. For the operation performed on Ms. White, a physician is a trained individual able to participate in and actively assist the surgeon in completing the operation safely. Complications developed post operatively, related to the surgery performed, which required adequate exposure of the surgical field, that a trained physician as surgical assistant could provide to optimize safe surgical care. Surgery is a team effort. Silver Cross Hospital and Medical Centers provided the surgical assistants, along with the other members of the surgical team, and was required under the standard of care to ensure patient care that facilitates optimal patient outcome. Silver Cross Hospital and Medical Centers in providing a nurse for this major abdominal surgery, failed to do so, and thereby deviated from the standard of care.

8.      All of the above constitute acts of negligence and conduct that fell below the standard of care in the treatment of Rhonda White. This standard of care was uniform throughout the United States. As a direct and proximate result of these negligent acts and/or omissions, Rhonda White sustained a uretero-vaginal fistula and now suffers from overactive bladder with urgency frequency, urinary urgency incontinence, and persistent left sided flank pain at the site of her previous nephrostomy tube.

9.      That additional reasons may exist or be found to support these opinions upon further development of this case.

# Exhibit B

## CERTIFICATION

Pursuant to the provisions of 42 U.S.C. § 233, and by virtue of the authority delegated to me by the Attorney General under 28 C.F.R. § 15.4 and through the United States Attorney for the Northern District of Illinois, I hereby certify that I have read the complaint in *Rhonda White v. Chukwudi Nwawka, M.D., et. al.*, No. 2018 L 3793 (Circuit Court of Cook County, Illinois), and all attachments thereto.   On the basis of the information now available, I find that at the relevant times, Aunt Martha's Youth Services Center, Inc. ("the health center") was a private entity receiving grant money from the Public Health Service pursuant to 42 U.S.C. § 233.   Further, I certify that Dr. Chukwudi Nwawka was acting within the scope of his employment at the health center with respect to the incidents referred to in the complaint.   Accordingly, for purposes of the above case, Dr. Chukwudi Nwawka is deemed to be an employee of the United States pursuant to 42 U.S.C. § 233, for Federal Tort Claims Act purposes only.


         s/ Thomas P. Walsh
        THOMAS P. WALSH
        Chief, Civil Division
        Office of the United States Attorney
          for the Northern District of Illinois

Date: December 22, 2018